## Case No. 805.

### BALDWIN v. SIBLEY et al.

[1 Cliff. 150.] [1]

Circuit Court, D. New Hampshire. Oct. Term. 1858.

PATENTS FOR INVENTIONS—ASSIGNMENT—EVIDENCE.

1. The granting clause of a deed was in the following words: "Give, grant, bargain, and sell . . . . one of Baldwin's peg-splitting machines, and the right to use the same and of vending to others to be used, in the county of Cheshire, excepting the town of Hinsdale, being the same machine for which letters-patent were issued," &c. Held, the deed contained no words authorizing the grantee to construct any machine whatever; that it was a conveyance of a single machine already in existence, and of the right to use and sell that single machine within the described territory.

2. Whenever a conveyance of a right under a patent is of a character to create an interest in the patent itself, it must be shown by an instrument in writing; while a license to make and use a machine, as it is not required to be recorded, need not be in writing; but such license conveys no interest in the patent, and no power to authorize a third person to construct the patented invention.

3. Consequently, oral declarations of a patentee, not made to the defendants, which, if admitted, would show an exclusive right within a described territory, in the person through whom defendants claimed to derive their right, were held inadmissible.

4. Evidence showing that defendants had, with the plaintiff's knowledge and without objection on his part, used their machine for a number of years, was held incompetent to establish an exclusive right in the person under whom defendants claimed to derive their right to use the machine in controversy.

5. Parol proof of a lost memorandum, shown by the patentee to one of the witnesses, which memorandum contained a list of the rights sold by the patentee, and enumerated among others the conveyance of the exclusive right within a specified district to the person under whom defendants claimed, was held inadmissible.

At law. Action on the case [by Stephen K. Baldwin against Amos Sibley and Delano Sibley] for damages for an infringement of a patent right. [On motion for a new trial. Overruled.]

Stephen K. Baldwin was the patentee of a

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

machine for cutting shoe-pegs, under letters-patent [No. 2,725] dated the 16th of July, 1842. The patent was renewed on the 8th of July, 1856, and reissued [No. 409] in the following November. The writ contained three counts, and alleged in effect the construction and putting in practice of twenty machines which imitated the invention of the plaintiff. As to everything except the using and putting in practice of one machine, the defendants pleaded the general issue, and in respect to this one they pleaded specially that after the obtaining of the letters-patent, and before the same were renewed and reissued, their machine was constructed and assigned to them for a valuable consideration, and was put in use by them, of right, by the authority and license of the plaintiff. The jury returned a verdict for the plaintiff, and defendants moved for a new trial, alleging error in certain rulings of the court, and also upon the ground of misdirections to the jury. It appeared at the trial that the machine in controversy had been constructed by one Hollon Farr, under a parol license from one Sylvanus Bartlett; under which license Farr had sold the machine to the first-named defendant, who, with the other defendant, had put the machine into use. A deed from Stephen K. Baldwin to Sylvanus Bartlett was introduced by the defence, under which it was claimed that Bartlett had obtained the right to manufacture and sell any number of the machines within a certain specified territory. According to the language of the deed, the grantors gave, granted, bargained, and sold "unto Sylvanus Bartlett one of Baldwin's peg-splitting machines, and the right to use the same, and of vending to others to be used, in the county of Cheshire, excepting the town of Hinsdale in said county, being the same machine for which letters-patent were issued under the seal of the patent-office of the United States." The court, however, construed the deed to convey to the grantee but one machine, with the right to use and sell the same within the described limits, and thus instructed the jury. This ruling of the court constituted one of the grounds of the motion for a new trial. The other rulings, to which objection was taken, sufficiently appear in the opinion.

Edmund Burke, for plaintiff.

John S. Wells and Causten Browne, for defendants.

CLIFFORD, Circuit Justice. It was insisted by the counsel for the defendants that the deed, when properly construed, authorized the grantee to make and use, and vend to others to be used, any number of machines he might see fit to make and sell within the territory defined and described in the deed. To that proposition it will be sufficient to say that the deed contains no words authorizing the grantee to make and construct any machine whatever. It purports to convey one of the machines, and the right to use and sell the same within the described territory, clearly leaving it to be inferred that the machine had already been constructed, and that it constituted the principal subject-matter of the contract. By the words of the deed, therefore, it is apparent that it was a conveyance, not of the right to make and construct a machine, but of the machine itself, as already constructed and in existence, and of the right to use and sell the same within the described territory. Reliance, however, is placed upon the succeeding phrase, which it becomes important to notice, as the whole instrument must be taken together in order to ascertain its true construction. All the ambiguity, if any, arises from that phrase, which is immediately connected with the one already recited, and reads as follows: "and of vending to others to be used in the county of Cheshire, excepting the town of Hinsdale in said county." Take the language as it reads, and it is too obvious to admit of a doubt that the whole paragraph is immediately connected with the word "same," which precedes it, and refers to the machine previously conveyed in the granting part of the deed; and this is made even more evident by the concluding portion of the sentence, in which the machine conveyed is described as being the machine for which the letters-patent were issued. Every one of these considerations is inconsistent with the idea that more than one machine was conveyed; and when taken together they afford a demonstration that the proposition assumed by the counsel for the defendants on this branch of the case cannot be sustained.

Second. Evidence was offered by the defendants tending to show that Sylvanus Bartlett, prior to the construction of the machine in controversy by Farr and its sale by him to the defendant, had a license, by parol from the patentee, to make and use, and vend to others to make and use, the patented machines within the territory described in the deed. It consisted of oral declarations of the patentee made at various times before the expiration of the original term for which the patent was granted. None of these supposed declarations, however, were made to the defendants or either of them; and being objected to by the counsel for the plaintiff, they were excluded by the court. On the same point and for the same purpose, the defendants also offered to prove that they had put in practice and used their machines for ten years before the original term of the patent expired, claiming to own it, and with the knowledge of the patentee, and without objection on his part. This evidence was also objected to by the counsel for the plaintiff, as incompetent and insufficient to establish a right in Sylvanus Bartlett to authorize Farr to construct the machine in controversy and sell it to the defendants, and it was accordingly ruled out by the court. They also offered to prove on the same point, and for the same purpose, that a paper or memorandum,

since lost, was given by the patentee to one of the witnesses in 1858, as and for a list of the rights which he the patentee had sold under his patent, and that the list so delivered to the witness recited that he had sold to Sylvanus Bartlett the right to make and use, and vend to others the right to make and use, the patented machines, within the county of Cheshire in this district, with the exception of the town of Hinsdale, as claimed by him in virtue of his deed. Objection was also made to this testimony by the counsel for the plaintiff, and it was excluded by the court; and these several rulings constitute the foundation of the second cause assigned for a new trial in this case. These second rulings will be considered together, as all the evidence was offered for the same purpose, as is properly stated in the motion, and the several offers of proof involved the same general considerations. It was offered to prove by parol that the patentee had conveyed the right to Sylvanus Bartlett to make and use, and vend to others the right to make and use, an indefinite number of the patented machines within the described territory. No pretence was set up at the trial that Farr had any other right or license to make and sell the machine in controversy, except what was granted to him by Sylvanus Bartlett, or that the defendants or either of them had any right or license to put the machine in practice and use it, except what they derived by the purchase of the machine from Hollon Farr. This statement embraces a summary of the exact state of facts; and the only question is, whether the rulings of the court were correct. It is admitted by the counsel for the defendants that a patent privilege or monopoly could not be assigned at common law, except by deed, for the reason that, being a franchise and part of the royal prerogative, it could only subsist by royal grant. But it is insisted that the rule is otherwise in this country; and within certain limits and subject to certain qualifications, the argument appears to be just, and may well be admitted. By the eleventh section of the patent act of the 4th of July, 1836, [5 Stat. 121,] it is provided that every patent shall be assignable in law either as to the whole interest or any undivided part thereof, by any instrument in writing; which assignment, and also every grant and conveyance of the exclusive right under any patent, to make and use, and to grant to others to make and use, the thing patented within and throughout any specified part or portion of the United States, shall be recorded in the patent office within three months from the execution thereof. Whenever a patent is renewed and extended by the commissioner of patents, it is provided by the eighteenth section of the same act that the benefit of such renewal shall extend to assignees and grantees of the right to use the thing patented to the extent of their respective interests therein. These two provisions beyond question

are in pari materia, and so far as they relate to the same subject must be construed together. Most of the questions arising upon their construction, which were originally supposed to be involved in any obscurity, have been settled by the decisions of the courts; and in respect to some others which have not been so determined, the language of the respective provisions is too plain and unambiguous to admit of any serious doubt. As a general rule, an assignment of an interest in a patent must be in writing, for the reason that such transactions are required to be recorded, and in fact and reality are not authorized to be made in any other way. Gayler v. Wilder, 10 How. [51 U. S.] 493. Licenses to make and use the machine for the purposes for which it is constructed, when derived from the patentee, or from one holding a territorial right by virtue of a valid conveyance from him, are not required to be recorded, and consequently need not be in writing. Contracts not required by law to be in writing may be proved by parol evidence; and therefore a mere license to make and use the thing patented, when derived from an authorized source, may be proved in that way. Difficulties sometimes arise in determining whether, by the terms of the contract, the right conveyed in any given case amounts to an interest in the patent or is only a license to make and use the thing patented, within the principles just stated; but it seems to be well settled, that, wherever the contract is of a character to create an interest in the patent itself, it must be shown by an instrument in writing, which indeed is clearly to be implied from the very definition of assignment as generally understood in its application to patent rights. It is a grant in writing of the whole or a part of the exclusive right vested in the patentee by the letters-patent; and it makes no difference whether such part be designated as an undivided part of the whole patent, or as the grant of the exclusive right of the patentee within a particular district; for in either case it is a conveyance of an interest in the patent, and as such must be in writing, and is required to be recorded. Curt. Pat. (Ed. 1849,) pp. 233, 234. When the patentee sells to another a patented machine made by himself, or permits such other person to make the machine, the party thus authorized becomes a licensee, with the right of using and selling the machine; but he has no interest in the patent, and it is well settled that he cannot, by virtue of such a contract, authorize a third person to make the machine. All the cases agree that every grant which embraces any portion of the exclusive right under the patent is an assignment, and there can be no doubt that every such assignment must be in writing; and if so, it cannot be proved by parol evidence. Other tests have been suggested by which to determine whether a particular instrument amounts to an assignment, or only to a license; and, accord-

ingly, it has been held that an authority conferred upon a party to make or construct the thing patented, without mentioning his assigns, is nothing more than the grant of a power or the dispensation with a right or remedy which confers only a personal right upon the licensee, and is not transmissible to any other person. Several decisions have been made upon this subject, to which it may be useful to refer as the means of elucidating the particular question involved in this branch of the motion now under consideration. Where a patentee undertook, by deed under seal, to grant, bargain, sell, convey, assign, and transfer to another, his executors, administrators, and assigns, the right and privilege of making, using, and selling the thing patented, stipulating that the grantee should have the right and privilege of manufacturing the same to the extent that six persons could accomplish the object, with the right to vend the manufactured article in any part of the United States, it was held that this was a license or authority from the patentee, and need not be recorded. Brooks v. Byam, [Case No. 1,948.] One of the reasons assigned for holding that it was a license, and that it did not create an interest in the patent, was that the exercise of the right granted was not limited to any particular locality, and the same learned judge held that the right so granted was as entirely incapable of being apportioned or divided among different persons, and therefore that an assignment, by such grantee, of a right to another to make as many of the manufactured articles as one person could prepare was void. On the other hand, it was held by the supreme court, in Wilson v. Rousseau, 4 How. [45 U. S.] 686, that an assignee of the exclusive right to use two machines within a particular district can maintain an action for an infringement of the patent within that district even against the patentee, and the same court affirmed the principle in Woodworth v. Wilson, 4 How. [45 U. S.] 716, which was decided at the same term. At the trial it was understood by the court in this case that the evidence was offered by the counsel of the defendants to set up an exclusive right within the described territory; and it is proper to say that, if such was not the intention of the counsel at the time, he failed to make himself understood by the court. Whether so or not, however, it can make no difference in the determination of the questions presented in the motion for a new trial, as, in any point of view which can be taken of the case, the evidence was not admissible. If it was offered to set up an exclusive right in Sylvanus Bartlett, then it was inadmissible; because it was an offer to prove an assignment of an interest in the patent, which, to be valid and obligatory, must be in writing, and cannot be evidenced by parol testimony; and if it was offered to set up a mere license in the supposed grantee, then the right so conferred was a mere personal right in the

licensee, which could not be transmitted to Hollon Farr. Gayler v. Wilder, 10 How. [51 U. S.] 492. Such, however, was not the nature of the right set up, as clearly appears from the offers of proof and from the course of the trial. Those offers were not made until the legal effect of the deed had been ruled by the court, and the parol testimony was offered as a substitute for the authority, which, it was insisted by the counsel for the defendants, might well be derived from the terms of the deed; and no doubt is entertained that the evidence offered, if admissible, would establish an exclusive right in Sylvanus Bartlett to make and use the machines, and vend the right to make and use the same to others. One thing, however, is certain, and that is, that the defendants either set up an exclusive right in Sylvanus Bartlett, or they did not. If they did, then the right could not be established by parol testimony; and if they did not, but merely set up a license in him to make and use the patented machine, then he could not assign that right in any way to another; so that, in either point of view, this cause for a new trial is destitute of any proper legal foundation.

Third. From the course of the argument it may be inferred that very little reliance comparatively is placed upon the third cause assigned for a new trial; and, considering the nature of the action, the character of the testimony, and the state of the record, it cannot be necessary to give it any extended examination. Suffice it to say, that, in view of the pleadings and of the well-known rule of law that all are principals in tort, it cannot be sustained. Accordingly the motion for new trial is overruled, and there must be judgment on the verdict.